# No. 22-475

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Gnana M. Chinniah
a/k/a Gnanachandra M. Chinniah
Plaintiff/Appellant

v.

Federal Energy Regulatory Commission, John Spain, and Prapa Haran
Defendants/Appellees

On Appeal from February 9, 2022 Order of the United States District Court for the Southern District of New York (Judge Vernon S. Broderick) in No. 1:18-cv-08261

## BRIEF OF APPELLANT GNANA CHINNIAH

Submitted by,

Gnana M. Chinniah, Plaintiff, *Pro Se*

506 Erford Road
Camp Hill, PA 17011
Home Tel: 717 732 6273
Email: chinniahg@hotmail.com

*Deficiency Corrected Cover Page for Brief Original Filed on 9 June 2022*

# No. 22-475

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Gnana M. Chinniah
a/k/a Gnanachandra M. Chinniah
Plaintiff/Appellant

v.

Federal Energy Regulatory Commission, John Spain, and Prapa Haran
Defendants/Appellees

On Appeal from February 9, 2022 Order of the United States District Court for the
Southern District of New York (Judge Vernon S. Broderick) in No. 1:18-cv-08261

## BRIEF OF APPELLANT GNANA CHINNIAH

Submitted by,

Gnana M. Chinniah, Plaintiff, *Pro Se*

506 Erford Road
Camp Hill, PA 17011
Home Tel: 717 732 6273
Email: chinniahg@hotmail.com

## TABLE OF CONTENTS

Table of Authorities……………………………………………………....,1

Statues…………………………………………………………...…..1

Statement of Appellate Jurisdiction……………………………………..….2

Statement of Questions Presented……………………………………......3

Statement of the Case………………………………………………...…..4

Statement of the Facts………………………………………………...…..5

Summary of the Argument………………………………………………....16

Argument……………………………………………………………......17

Conclusion………………………………………………………….....29

Certification of Word Count………………………………………...…....29

Certification of Document……………………………………………....29

Certificate of Service………………………………………………....30

## Table of Authorities

Bivens v. Six Unknown Named Agents of Federal
Bureau of Narcotics, 403 U.S. 388 (1971)……………………………………....26

Bond v. Leavitt, 629 F.3d 369 (4th Cir. 2011)…………………………………....19

Broselow v. Fisher, 319 F.3d 605 (3d Cir. 2003)………………………………....18

Bush v. Lucas, 462 U.S. 367 (1976)……………………………………………....28

Phillips v. Allegheny County, 515 F.3d 224 (3d Cir. 2008)…………………….....18

Willis v. Department of Agriculture, 141 F.3d 1139, at 1144 (Fed.Cir. 1998).....19

Ziglar v. Abbasi, 137 S. Ct. 1843 (2017)……………………………………….....25

Zipes v. Trans World Airlines,. Inc., 455 U.S. 385 (1982)……………………....23

## STATUTES

5 U.S.C. §§1221……………………………………………………………….....19

5 U.S.C.
§2302(b)(8)……………………………………………………………………....19

28 U.S.C. §1291…………………………………………………………………....2

28 U.S.C. § 1367……………………………………………………………….3,4

## STATEMENT OF APPELLATE JURISDICTION

This appeal is from the Order granting Defendants' Rule 12(b)(6) Motions, and dismissing the Amended Complaint entered on February 9, 2022. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291. The notice of appeal was timely filed with this Court on 03 March 2022.

## STATEMENT OF QUESTIONS PRESENTED

1.    Did the lower court err in dismissing Plaintiffs' claims under the Whistleblower Protection Act when there were equitable reasons that excused the exhaustion of remedies requirement?

Suggested Answer Yes

2.    Did the lower court err in dismissing Plaintiffs' claims for discrimination and equal protection violations without giving him the opportunity to amend?

Suggested Answer Yes

3.    Did the lower court err in dismissing Plaintiffs' state law claims under 28 U.S.C. § 1367, causing Plaintiffs to proceed in two courts when all state law claims were within the mandatory jurisdiction of the lower court?

Suggested Answer Yes

## STATEMENT OF THE CASE

Plaintiffs filed the present case on 11 September 2018, and filed, after the Defendants filed a Motion to Dismiss filed an Amended Complaint on 5 Aug 2019.

Plaintiffs Complaint in this matter raised claims under the Whistleblower Protection Act, and claims under the First and Fourteenth Amendments against the individual Defendants for discrimination and retaliation. The Complaint also raised claims under state law pursuant to 28 U.S.C. 1367.

The Defendants/Appellees filed additional Motions to Dismiss the Amended Complaint, which were promptly briefed by the Plaintiff on 10 October 2019. Nevertheless, the Court sat on the case for over two years before granting the Defendants' Motion to Dismiss, and dismissing the Amended Complaint in its entirety by Order of February 9, 2022 within 6 days after Plaintiff followed up on the status of the case by contacting the clerk of the court and "Pro Se intake unit". Appellants wish to bring it to the attention of this honorable Court about the fact that the District Court Judge Hon. Vernon S. Broderick served as the United States Attorney for the Southern District of New York, and he appears to have abused his authority in treating the Appellant with the way he dismissed each and every viable federal claim, and refused to perform his mandatory duty of exercising jurisdiction over state court claims. Therefore, Appellant has attached his Brief in Opposition that he had filed with the District Court for thorough/*de novo* review by this Court.

4

## STATEMENT OF THE FACTS

Inasmuch as this Court's standard of review is plenary, and it must conduct a de novo review of the Amended Complaint, Plaintiffs incorporate their Amended Complaint herein by reference, in its entirety, as set forth in Section 4 of Appendix. *(PP. 20-34)* All these facts must be accepted as true under the 12(b)(6) standard of review.

Plaintiff Chinniah was hired by Defendant FERC as a Civil Engineer to work at its New York Regional Office on 23 January 2017 under the direct supervision of Defendant Haran. Plaintiff served as a probationary employee for six months, or until 22 June 2017, and had been satisfactorily performing the work assignments from Defendants FERC and Haran as reflected by the quarterly performance evaluation during 2017.

Defendant Haran mandated that his underlings including Plaintiff Chinniah to sign in and sign out in his office on those days they report to the FERC's New York Regional Office. Defendants FERC and Haran utilize a scheduling software called "DAMS" to keep track of the working schedules of those staff who perform dam safety inspections out in the field.

Suspecting that there was some employee abuse, Defendant Haran used Plaintiff to have him inform Haran as to the time a few of his underlings including Mr. Harold Kamara signed in/out of the "sign in sheet" that he keeps in office as he was aware and/or suspected that some of his underlings who have been cheating on

their sheet.

On 22 June 2017 around 9 am, when Plaintiff Chinniah was on his way to inspect a dam in Pocono Mountains in PA, Defendant Haran called to have Plaintiff to check as to what time Mr. Kamara had signed in his sign in sheet, without realizing that Plaintiff was not in the NYRO.

On 13 July 2017 around 7:35 am, Plaintiff went to Defendant Haran's office to sign in the sign in sheet, Plaintiff noted that Mr. Harold Kamara had already "signed in" at 8:30 am. Plaintiff was concerned about the legitimacy of the time entered by Mr. Kamara, therefore, took pictures of the sign in sheet and the wall clock in Defendant Haran's office to document the actual time (7:35 am) when he noted the questionable time entered by Mr. Kamara. Plaintiff also took pictures of the work area of Mr. Kamara where there was no light or his laptop computer that confirmed Mr. Kamara was not in the NYRO building around 7:40 am.

When Plaintiff was going away from Mr. Kamara's work area after taking the picture, he met Mr. Richard Deubert who had signed in at 7:05 am in Defendant Haran's sign in sheet, and inquired if Mr. Deubert had seen Mr. Kamara that morning within the NYRO building. Plaintiff also asked Mr. Deubert if he had noticed the time (8:30 am) that Mr. Kamara had entered when Mr. Deubert was signing in Defendant Haran's sign in sheet at 7:05 am.

Mr. Deubert described the situation by saying, "things are out of control" and

this type of unethical conduct of a few including Mr. Kamara was due to lack of actions by those supervisors including Defendants Spain and Haran who themselves are "teleworking" too often.  Mr. Deubert also told the Plaintiff that he had complained to those in responsible positions about some serious unethical conduct of a few employees who were abusing the system, however, no action was taken to stop them other than suggesting him to leave the FERC-NYRO.

Mr. Deubert told Plaintiff that he told the supervisor who had asked him to leave FERC-NYRO that, in fact, it is that supervisor should leave FERC as Mr. Deubert's leaving FERC was not going to save any tax payers' money, and pointed a few specific ongoing unethical issues.  When Plaintiff told about this incident to a Senior Engineer, Dr. Vai Navaratnam, he said he was also very concerned about this and would promptly convey it to Defendant Haran.

Plaintiff also followed up with Defendant Haran to make sure that he was aware of that incident on 13 July 2017 involving the questionable/unethical signing in of Mr. Kamara who was not in the NYRO building on that day, and suggested him to verify it with Mr. Richard Deubert.  Although Defendant Haran was concerned about dishonest signing in/out of a few of his underlings including Mr. Kamara and Mr. James Huang, and used Plaintiff to inform him about this issue, he never showed any interest to follow up on this incident for almost two weeks.

On 27 July 2017, which is after the Plaintiff completed his probationary

7

employment, Plaintiff went to see Defendant Spain to verify if he was aware of the incident involving Mr. Kamara's dishonest signing in/out that he had brought to the attention of Defendant Haran to make sure this matter is investigated by verifying with Mr. Richard Deubert. Defendant Spain was very defensive and downplayed this incident by justifying Mr. Kamara's questionable signing in of 8:30 am (when I saw it at 7:35 am), saying that he may have come to NYRO to sign in that day and may have left the office to perform dam safety inspections.

When Plaintiff told Defendant Spain that Mr. Richard Deubert was privy to the serious unethical conduct of a few NYRO staff including Mr. Kamara, Defendant Spain became visibly angry and intimidated him by saying the supervision of these issues were not Plaintiff's responsibility and blamed that Plaintiff showed him an attitude and asked the Plaintiff how long was he working for FERC-NYRO, with a threat to terminate Plaintiff's probationary employment. Plaintiff repeatedly told that he was not showing any attitude to Defendant Spain but only wanted to have a meeting with his direct supervisor, Defendant Haran so the incident involving Mr. Kamara's dishonest signing in on 13 July 2017 is investigated to uncover the truth.

Around 11:37 am on 27 July 2017, Plaintiff followed up with an email to Defendant Spain copying to Defendant Haran, with a suggestion to include Mr. Deubert in the meeting that Defendant Spain verbally agreed to have to discuss this matter since Mr. Deubert was privy to it. Within a couple of minutes after Plaintiff

sent the email copying to Defendant Haran, and a few senior staff including Mr. Deubert, Defendant Spain came rushing into the cubicle of Plaintiff, without asking for any permission, and whispered threats using derogatory language stating that Plaintiff was not even worth a half of what Mr. Kamara was doing for FERC.

As the Plaintiff was in a shock and did not understand as to why Defendant Spain chose to rush to his cubicle which is located almost 20 yards away from Spain's office, Plaintiff asked Defendant to repeat what he whispered in "plain English" and louder to be clear to everyone. Defendant Spain started to rush back to office as Plaintiff's questioning him in loud voice that made neighboring staff engineers to peek their heads from their cubicles, to see what was going with Defendant Spain and the Plaintiff who is normally very quiet, minding his business. As Defendant Spain did not restate his threats that he had whispered in Plaintiff's ears, Plaintiff was following him behind asking him to repeat what said or give the same in writing.

As Defendant Spain rushed back into his office and closed his door refusing to respond, Plaintiff showed the email that resulted in that confrontation with Defendant Spain to explain what happened to his secretary, Ms. Donna Samuels whose office was in front of Spain's. While Plaintiff was showing the email to explain Defendant Spain's intimidation and verbal abuse, Defendant Spain opened up his door and directed Ms. Samuels to contact the Federal Protection Service to have Plaintiff removed from the FERC-NYRO building immediately.

9

As Plaintiff was very shaken by the verbal abuse and intimidation of Defendant Spain who directed his secretary to have him removed using federal agents, Plaintiffs told both Defendant Spain and Ms. Samuels that he was leaving the NYRO respectfully and immediately. Due to the veiled threats of termination of Plaintiff's employment, Plaintiff returned the security access card to FERC-NYRO to avoid any unwanted consequences by having this card. As Plaintiff honestly believed that he did not deserve any of the intimidation and threatened removal by federal agents for being a Whistleblower to the ongoing serious ethical violations that he witnessed, he told that he was going to consult with an attorney and left promptly.

After being subject to the horrible treatment of Defendant Spain, Plaintiff did not feel fit to return to work at NYRO on Monday, 31 July 2017, therefore, sent an email around 8:30 am to Defendants Spain and Haran copying it to others involved. The email included a request for sick leave from Plaintiff and request to reschedule meeting to discuss ethical issues within NYRO.

Instead of responding to the above email from Plaintiff around 8:30 am with his sick leave request, Defendant Spain sent a separate email around 1:07 pm saying that he placed the Plaintiff on Administrative leave with a recommendation to Human Resources of FERC-DC to terminate Plaintiff's "probationary employment" stating Defendant Haran concurred with him.

On 1 August 2017 around 8:37 am, Plaintiff sent an email to the direct supervisor of Defendant Spain, Mr. David Capka, by forwarding the email from Spain to clarify his position and to request him to follow the due process to investigate into this incident to be fair to all involved indicating that Plaintiff would fully cooperate with the Human Resources of FERC. Mr. David Capka who is the Director of the Division of Dam Safety and Inspections (D2SI) replied promptly saying that he was forwarding that email to FERC's HR (Exhibit F).

On 4 August 2017, Mr. Richard Deubert wrote to Defendants Spain and Haran, copying to Mr. David Capka that he was willing to discuss the serious ethical issues within NYRO by acknowledging that he received Plaintiff's email dated 27 July 2017, requesting for the meeting that resulted in Defendant Spain's threat forcing the Plaintiff to leave FERC-NYRO.

On 9 August 2017, Plaintiff sent another email to Defendants Spain and Haran and Mr. David Capka to follow up on the status of his Administrative leave and to find out a way to return the travel subsidy that was direct deposited into Plaintiff's checking account.

On 11 August 2017, Director of Human Relations of FERC, Mr. Sidney Chapman left a message in Plaintiff's cell phone indicating that he was directed by Mr. David Capka of D2SI of FERC to investigate into the incident and the alleged ethical issues within FERC-NYRO. Plaintiff promptly returned Mr. Chapman's

phone call on the same day but could not speak to him until August 16, 2017 after another email follow up with the Director of D2SI, Mr. David Capka as Mr. Chapman did not answer calls/messages until August 16, 2017.

Plaintiff spoke to Mr. Chapman of HR of FERC for about 45 minutes on 16 August 2017 and explained the entire sequence of events that resulted in Defendant Spain forcing the Plaintiff to leave NYRO on 27 July 2017, and identified witnesses including Mr. Deubert and Ms. Borzillo who are aware of the ongoing serious ethical issues and Defendant Haran's sign in sheet.

Mr. Chapman asked the Plaintiff to describe exactly what kind of derogatory and threatening language that Defendant used when he rushed into his cubicle shortly after receiving the email on 27 July 2017 and seemed to have understood the failure of Defendant Spain to act professionally by replying to Plaintiff's email to schedule a meeting to discuss those ethical issues. Mr. Chapman was also informed about Plaintiff's discussion with Mr. Deubert who witnessed the dishonest signing in of Mr. Kamara when he signed in at 7:05 am on July 13, 2017, and Ms. Kara Borzillo being privy to Mr. Kamara's and Mr. Huang's dishonest signing in/out etc. Mr. Chapman told Plaintiff that he would investigate into these matters and would contact the Plaintiff should he require any further evidence or testimonies to do his investigation.

Defendant Haran also used a fellow FERC employee to influence the Plaintiff

by leveraging a pending serious surgery on Plaintiff's wife as a bargaining tool with suggestions to not to complain the ethical issues to FERC's Head Quarters in Washington, DC, but schedule the surgery and seek some anger management counseling help before Plaintiff's health benefits ended.

Defendant Haran violated the privacy of Plaintiff's wife by disclosing a very confidential conversation seeking Haran's permission to schedule a dam safety inspection during the Labor Day week in September at York Haven Dam in York, PA which is located 20 miles away from Plaintiff's residence in Camp Hill, PA so that Plaintiff could be with his wife after her surgery.

After placing the Plaintiff on Administrative leave pending the investigation by Mr. Chapman of HR for almost six weeks, Defendant Spain sent an email on 11 September 2017 titled "Notification of Termination of Probationary Employment" with last day to be 15 September 2017.  This was nearly two months after the Plaintiff's probationary employment ended.  Defendant Spain also attached a letter explaining his own reasoning behind the termination that include Plaintiff's failure to seek permission to be away from work after he was forced out of NYRO on 27 July 2017, and being not dependable to do the type work assignments, by completely distorting the sequence of events to cover up the serious ethical issues within NYRO.


For the purpose of exposing the willful false accusations of Defendant Spain

such as Plaintiff did not seek permission to be away from work until Defendant Spain sent an email around 1:07 pm placing Plaintiff on Administrative Leave, Plaintiff sent his response, copying to all involved, by pasting the email that he sent around 8:30 am requesting sick leave and to reschedule the meeting on 31 July 2017 until further notice to discuss the ethical issues.

Plaintiff also sent another follow email in response to Defendant's email request on 11 September 2017, for the mailing address to ship Plaintiff's reading glasses from the work area at NYRO, clarifying the actual hiring date (23 January 2017) that Defendant willfully misstated to distort facts so that he could get away by using a 6-month probation as a cover to fire the Plaintiff.

Plaintiff also copied his emails to Defendant Spain on 11 September 2017 to Defendant Haran, Mr. David Capka of D2SI of FERC, Mr. Chapman of HR of FERC, and Mr. Deubert so that they are made aware of the unfair termination of Plaintiff for being a Whistleblower of the serious ethical issues, disputing Mr. Spain's baseless accusations and distorted hiring date.

Plaintiff allege that Defendants Spain and Defendant Haran tarnished Plaintiff's reputation and violated his family's privacy by spreading baseless accusations through their covert actions to influence the Plaintiff by leveraging a pending surgery on his wife, and suggested counseling help, by influencing not to pursue Plaintiff's complaints to FERC's HR in Washington.

Plaintiff also alleged that Defendants Spain and Haran disposed all of Plaintiff's personal belongings from his work area at NYRO, other than a pair of eye glasses, and may have had access to personal information of Plaintiff and his family from the files with benefit records.

Plaintiff sent an email to the Senior Management within FERC on 13 September 2017, requesting a thorough investigation into the ongoing serious ethical issues that Defendants Spain and Haran willfully covered up, by victimizing him for being a Whistleblower. In response to Plaintiff's email on 13 September 2017 to the senior management of FERC that was copied to Defendants Spain and Haran, Mr. Deubert replied to all involved on 15 September 2017 which is a strong evidence/smoking gun about the ongoing serious ethical issues within NYRO Plaintiff complained and become victim despite being a whistleblower.

Plaintiff's emails to the senior management of FERC also included his request to follow the guidelines of EEOC and a proposal to continue his employment with a similar position within FERC's office in Washington, DC as an Alternate Dispute Resolution (ADR) means to resolve the dispute amicably in lieu of filing a federal complaint with this honorable court, however, Plaintiff received no response from the Defendants, and this suit ensued.

## STATEMENT OF RELATED CASES

There are no related cases

## SUMMARY OF THE ARGUMENT

This appeal raises the issue of the extent to which equitable considerations can be used to excuse administrative filing requirements, and permit direct actions in the federal courts over matters involving federal employment practices.

The Plaintiff in this case raised issues as to all of his rights under federal law, to include the Whistleblowers Protection Act, as well as claims under the federal civil rights laws, including claims for discrimination and retaliation, and claims under state law governing all of the matters that are at issue in this case. All these claims were filed directly in the lower court, and Plaintiff did not pursue any of these claims administratively, which is the only basis upon which they were dismissed after almost 2.5 years after both parties filed their extensive briefings.

The Plaintiff asserts that equitable considerations apply to excuse the administrative filing requirements in this case, and that some of the claims, including those under state law, survive the administrative filing requirements, and that all claims should have been permitted to proceed in the first instance in the lower court. The lower court judge dismissed this case for lack of jurisdiction only.

Plaintiff also believes that consideration should be given to the materials he cites in his Brief concerning the recognized futility of the administrative procedures by at least one commentator, and even one United States Senator, Senator Grassley, who point out the shortcomings in the administrative processes

16

that undermine the rights of federal employees by cutting of their access to the courts, quoting the excessive filings of Motion to Dismiss by the Dept of Justice.

The Plaintiff also raises the matter of his treatment as a <u>pro se</u> litigant in the lower court. This case was pending in the lower court on Defendants' Motion to Dismiss for over two years. It was on February 3, 2022 when Plaintiff contacted the lower court to inquire as to the status of this case pending for over two years. Plaintiff was directed to the "<u>pro se</u> department" to address his issue, though there should be no difference in his treatment as a <u>pro se</u> as opposed to a represented litigant. Plaintiff was met with rude and dismissive treatment by the <u>pro se</u> staff, then his case was dismissed within 6 days of his contacting the district court staff, suggesting that he was not given full and fair consideration because he is a <u>pro se</u> litigant. Plaintiff believes that this difference in treatment caused the improper dismissal of his case, and respectfully urge this Court to investigate into this abuse.

## ARGUMENT

### Standard of Review

In ruling on an appeal of a motion to dismiss under Rule 12(b)(6), this Court's must apply a plenary standard of review, by which this Court applies the same standard the district court should have applied in the first place, to wit, to accept all allegations of fact, and the reasonable inferences deducible therefrom, as true, and to determine whether those facts support claims for relief under the legal theories

advanced by the Plaintiffs. <u>See Broselow v. Fisher</u>, 319 F.3d 605 (3d Cir. 2003).

This case raises issues as to the lower court's application of the standard of review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the lower court improperly rejected the Plaintiffs factual statements as conclusory, and failed to recognize the reasonable inferences supported by the facts pleaded, which supported all of Plaintiff's legal claims for relief he provided with strong evidence.

Despite the discussions and debates concerning the effect of <u>Twombly</u> and <u>Iqbal</u> on the pleading standards to survive a motion to dismiss, nothing has changed the basic standard that this Court <u>must</u> accept all the facts, and the reasonable inferences that they support as true. <u>See Phillips v. Allegheny County</u>, 515 F.3d 224 (3d Cir. 2008). The inference is a fact that must be accepted as true, and, as the Court in <u>Phillips</u> said:

> The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**A. THE LOWER COURT ERRED IN DISMISSING PLAINTIFFS' WPA CLAIMS WHEN PLAINTIFF ALLEGED FACTS TO EXCUSE STRICT COMPLIANCE WITH THE EXHAUSTION OF REMEDIES REQUIREMENTS.**

**1. Plaintiff's Whistleblower Protection Act Claims are Reviewable in the federal courts.**

The lower court dismissed the bulk of Plaintiff's whistleblower claims for Plaintiff's purported failure to comply with Civil Service Reform Act of 1978 ("CSRA") exhaustion of remedies requirements in cases involving whistleblower retaliation claims. The lower Court was incorrect.

The 4th Circuit Court of Appeals found, in *Bond v. Leavitt*, 629 F.3d 369 (4th Cir. 2011), that the CSRA does provide for a direct right of action in federal district court; and that a person aggrieved by retaliation that is alleged to have resulted from protected whistle-blowing activities, may file a civil action in federal district court, pursuant to the Whistleblower Protection Act ("WPA"), 5 U.S.C. §§1221.

To establish a claim under the WPA, a complainant is required to show only that he made a protected disclosure under 5 U.S.C. §2302(b)(8), and suffered an adverse personnel action based on his protected disclosure of "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to the public health or safety," 5 U.S.C. §2302(b)(8)(A)(ii).

Moreover, the WPA is "intended to protect government employees who risk their own personal job security for the advancement of the public good by disclosing abuses by governmental personnel," *Willis v. Department of Agriculture*, 141 F.3d 1139, at 1144 (Fed.Cir. 1998). Whether an employee suspects that his termination is the result of discrimination that may justify an EEO

19

Complaint; or other nefarious reason that may justify an appeal to the MSPB, the WPA act's protection does not have an administrative mechanism under which resort by the employee is required, and a direct action was therefore clearly contemplated by the WPA.

As applied to this case, Plaintiff's Amended Complaint states a clear and viable direct claim under the WPA, and such claims ***have been upheld*** by at least one Court of Appeals (*Bond*). Plaintiff submits that the allegations within his Amended Complaint are sufficient to satisfy the requirements of a direct claim under the WPA that (1) he reported gross mismanagement, and/or an abuse of authority; and that (2) he suffered retaliation from having done so. Plaintiff therefore encourages this Court to adopt the finding in ***Bond*** (supra), and to find that the Plaintiff in this case has sufficiently pleaded a direct WPA action over which this Court has jurisdiction.

The Defendant also argues that Plaintiff was a "probationary employee" with resort to the OSC, for a potential remedy. Plaintiff was not a probationary employee at the time of his termination. Plaintiff was a high level, federal civilian employee with Defendant FERC. As such, he would have finished his 6-month probation prior to the decision by the Defendants to terminate him by forcing out of the office on 27 July 2017 by using threat of immediate removal using Federal Protective Service. The Plaintiff was hired by the Defendant on January 23, 2017.

It is an undisputed fact that Defendant Spain willfully altered the hiring date of the Plaintiff from 23 January 2017 to 31 January 2017, to terminate him using the 6-month performance as cover with or without knowing that Plaintiff successfully passed the 6-month performance evaluation.

Plaintiff was placed on administrative leave and notified of the decision to remove him by e-mail dated July 31, 2017 – over a week after his probation had ended. The Defendants' suggestion that Plaintiff was a probationary employee is clearly a strategy designed to divert the Court's attention from the true issues in this case and, in fact, this stands as evidence of the retaliation about which Plaintiff complains, and justifies his Complaint in the District Court.

### 2. Equitable Circumstances Apply to Permit Plaintiff to Proceed in this Court.

Plaintiff has addressed Defendants' procedural related defenses they raised in their Motion to Dismiss the Amended Complaint by explaining the extremely difficult circumstances that he and his family went through, as stated in paragraphs 64-70 that made them to come to this Honorable Court directly, and these allegations inform the basis of Plaintiff's claim that he was not provided proper direction and notice of all rights while dealing with an extremely abusive situation in his federal employment outlining the equitable circumstances central to his defense, which are fact-based determinations, supported by strong evidence to prove Defendants' abuse.

21

Plaintiff referenced Exhibits B through M in the Amended Complaint, but did not attach them to the pleading; however these documents outline the factual circumstances relevant to paragraphs 64-70 of the Amended Complaint, and were attached to Plaintiff's Brief in the lower Court, and are included herein with the Appellant's Appendix within the Brief that was filed with the District Court in 2019.

The Plaintiff persisted in the very beginning in the proper investigation of his claims of very serious unethical and fraudulent misconduct, as well as his right to due process, and was met with an immediate and persistent course of abusive and fraudulent conduct in response, to include the dissemination of his private family health issues. Plaintiff reported, and requested investigations of, the fraudulent recording of times on "sign in" sheets at the FERC New York office, as well as the use of federal employees for the private pursuits of other FERC supervisors. He had extensive communications about these matters with his direct supervisors, Defendants Haran and Spain and Human Resources of Defendant FERC, and his reports were confirmed by a co-worker, who had made complaints, and was also met with threats and intimidation, as well.

Plaintiff received no substantive response to any of his communications, but received a notice of his termination, with the fraudulent representation that he was a probationary employee, after willfully altering the hiring date of Plaintiff to justify his termination by using 6-month probationary period as cover although he

successfully passed his 6-month performance review, creating confusion over his rights, after placing him on administrative leave for over six weeks. The Affidavit of Director of HR of FERC that was included with Defendant's Motion to Dismiss filed with the District Court confirms the correct hiring date of 23 January 2017.

Paragraphs 64-70 of the Amended Complaint outline all of the above, and the core of Plaintiff's argument is that the Defendants cannot benefit by their course of fraudulent conduct to continue to conceal the very serious ethical and legal issues raised by the Plaintiff, and his right to a proper remedy, especially when the Plaintiff was subjected to discrimination through the selective enforcement of Defendants' signing in/out procedures, and for violation of his family's privacy by using health insurance coverage as a bargaining tool in their attempt to silence him.

Administrative filing requirements are subject to waiver and equitable tolling, with particular consideration given to litigants who are unassisted by trained legal counsel. *See Zipes v. Trans World Airlines,. Inc.*, 455 U.S. 385 (1982). When a plaintiff, as in the present case, provides compelling reasons why an administrative process was not pursued, the Court should consider whether the equities permit the matter to proceed in this Court, or, alternatively, to direct that the matter proceed before the MSPB in the first instance.

It is an undisputed fact the Plaintiff was forced to surrender his "access card" to Defendant FERC's NY Regional Office under threat of immediate removal using

the Federal Protective Services for requesting for a meeting with the presence of another veteran employee who witnessed the fraud/corruption/abuse of tax payers' money warrants this Court exercise all of its power/authority to protect the rights of the Plaintiff/victim and this matter be fully investigated. He was then placed on administrative leave, and remained out of the New York office for over six weeks, until his termination, effective September 15, 2017, with his termination falsely stating that it was his probationary employment although he satisfactorily met his 6-month performance review, with no concerns over his work performance being raised before or after the incident involving Defendant John Spain on July 27, 2017.

Plaintiff submits that the Defendants attempted to create confusion over his employment status under circumstances that they knew was very trying for him in order to benefit from their fraudulent course of conduct. The requirement to go to the OSC and MSPB are for tenured employees, which have additional notice requirements that do not apply to probationary employees, and Defendants created confusion over the contours of the remedies available to the Plaintiff by fraudulently altering his hiring date to justify the firing by using probation as a cover.

In addition, despite the requirement under Zipes that particular consideration be given to unrepresented litigants, as it appears that the lower court has policies, by having a "pro se intake unit" at the US District Court for the Southern District of New York to treat such litigants **differently**. The fact is that this was a rapidly

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

_Gnana Chinniah_

v.

_Federal Energy
Regulatory Commission,
et al._

**CERTIFICATE OF SERVICE***

Docket Number: 22-475

I, _Gnana Chinniah_, hereby certify under penalty of perjury that
(print name)
on _09 June 2022_, I served a copy of _Brief of Appellant_
(date)
_Gnana Chinniah_
(list all documents)

by (select all applicable)**

___ Personal Delivery      _X_ United States Mail      ___ Federal Express or other
                                                            Overnight Courier

___ Commercial Carrier      ___ E-Mail (on consent)

on the following parties:

| Benjamin H. Torrance | 86 Chambers St | New York | NY | 10007 |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_09 June 2022_                           _G. Chinniah_
Today's Date                                Signature

Certificate of Service Form (Last Revised 12/2015)

30

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

DEBRA ANN LIVINGSTON
CHIEF JUDGE

Date: June 15, 2022
Docket #: 22-475
Short Title: Chinniah v. Federal Energy Regulatory Comm

CATHERINE O'HAGAN WOLFE
CLERK OF COURT

DC Docket #: 18-cv-8261
DC Court: SDNY (NEW YORK CITY)
DC Judge: Broderick

**NOTICE OF DEFECTIVE FILING**

On June 13, 2022, the Brief, Appendix, on behalf of the Appellant, was submitted in the above referenced case. The document does not comply with the FRAP or the Court's Local Rules for the following reason(s):

_____ Failure to submit acknowledgment and notice of appearance *(Local Rule 12.3)*
_____ Failure to file the Record on Appeal *(FRAP 10, FRAP 11)*
_____ Missing motion information statement *(T-1080 - Local Rule 27.1)*
_____ Missing supporting papers for motion (e.g, affidavit/affirmation/declaration) *(FRAP 27)*
**\_\_X\_\_\_ Insufficient number of copies *(Local Rules: 21.1, 27.1, 30.1, 31.1)* NOTE: 5 additional copies are needed for the Brief, Appendix.**
_____ Improper proof of service *(FRAP 25)*
_____ Missing proof of service
_____ Served to an incorrect address
_____ Incomplete service *(Anders v. California 386 U.S. 738 (1967))*
_____ Failure to submit document in digital format *(Local Rule 25.1)*
_____ Not Text-Searchable *(Local Rule 25.1, Local Rules 25.2)*, click here
for instructions on how to make PDFs text searchable
_____ Failure to file appendix on CD-ROM *(Local Rule 25.1, Local Rules 25.2)*
_____ Failure to file special appendix *(Local Rule 32.1)*
**\_\_X\_\_\_ Defective cover *(FRAP 32)***
**\_\_\_X\_\_\_ Incorrect caption *(FRAP 32) NOTE: AKA is missing. Please list all respondents' names. Et. Al. is not used in this Court.***
**\_\_\_X\_\_\_ Wrong color cover *(FRAP 32)* NOTE: Appendix must be white.**
**\_\_\_X\_\_\_ Docket number font too small *(Local Rule 32.1) NOTE: Must be an inch or larger.***
_____ Incorrect pagination, click here for instructions on how to paginate PDFs
*(Local Rule 32.1)*
_____ Incorrect font *(FRAP 32)*

_____ Oversized filing *(FRAP 27 (motion), FRAP 32 (brief))*
_____ Missing Amicus Curiae filing or motion *(Local Rule 29.1)*
_____ Untimely filing
_____ Incorrect Filing Event
___X___ **Other: Send corrected covers for brief, appendix submitted to the Court.**

Please cure the defect(s) and resubmit the document, with the required copies if necessary, no later than **July 6, 2022**. The resubmitted documents, if compliant with FRAP and the Local Rules, will be deemed timely filed.

Failure to cure the defect(s) by the date set forth above will result in the document being stricken. An appellant's failure to cure a defective filing may result in the dismissal of the appeal.

Inquiries regarding this case may be directed to 212-857-8525.



P:PURPLE S: BACK
40R-4000
N877-9 2022
1:018

UNITED STATES COURT OF APPEALS
40 FOLEY SQ
NEW YORK NY 10007

SHIPPING MANAGER
7179789991
MAIL ROOM, ETC
1200 MARKET STREET
LEMOYNE PA 17043

9 LBS          1 OF 1
DWT: 13,13,7

SHIP TO:
  CLERKS OFFICE
  UNITED STATES COURT OF APPEALS
  UNITED STATES COURTHOUSE
  40 FOLEY SQ
  NEW YORK  NY  10007-1507

NY 102 9-10

**UPS GROUND**

TRACKING #: 1Z E20 E65 03 9853 0877

BILLING: P/P

Trx Ref No.: PM PKG ID 159828
Trx Ref No.: FROM GNANA CHINNIAH
                XOL 22.05.15        NV45 27.0A 06/2022#

SEE NOTICE ON REVERSE regarding UPS terms, and notice and limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If applicable North ACL shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.