# 22-475

*To Be Argued By*:
ALYSSA B. O'GALLAGHER

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 22-475

➤◆◆◆➤

GNANA M. CHINNIAH, AKA GNANACHANDRA M. CHINNIAH,

*Plaintiff-Appellant,*

—v.—

FEDERAL ENERGY REGULATORY COMMISSION,
JOHN SPAIN, PRAPA HARAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for Defendants-Appellees.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2822

ALYSSA B. O'GALLAGHER,
BENJAMIN H. TORRANCE,
   *Assistant United States Attorneys,*
      *Of Counsel.*

**TABLE OF CONTENTS**

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . 1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . 2

Issues Presented for Review . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Procedural History . . . . . . . . . . . . . . . . . . . . 3

    B.  Chinniah's Allegations . . . . . . . . . . . . . . . . 4

    C.  The District Court's Order Dismissing the
       Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT I—The District Court Correctly Dismissed
    Chinniah's WPA Claim for Lack of
    Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.  The Civil Service Reform Act's Procedures
       for Review of Personnel Actions . . . . . . . . . 11

    B.  The District Court Lacked Jurisdiction to
       Consider Chinniah's Claim . . . . . . . . . . . 13

POINT II—The District Court Correctly Dismissed
    Chinniah's *Bivens* Claim . . . . . . . . . . . . . . . . . 17

ii

PAGE

POINT III—The District Court Did Not Abuse its
Discretion by Not Permitting Chinniah to
Further Amend His Complaint . . . . . . . . . . . .  19

POINT IV—The District Court Correctly Dismissed
Chinniah's State-Law Tort Claims as
Preempted by the CSRA. . . . . . . . . . . . . . . . .  20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

iii

# TABLE OF AUTHORITIES

*Cases*:

*Balintulo v. Ford Motor Co.*,
796 F.3d 160 (2d Cir. 2015) . . . . . . . . . . . . . . .  11

*Bonds v. Leavitt*,
629 F.3d 369 (4th Cir. 2011) . . . . . . . . . . .  15, 16

*Boos v. Runyon*,
201 F.3d 178 (2d Cir. 2000) . . . . . . . . . . . .  14, 16

*Bowles v. Russell*,
551 U.S. 205 (2007) . . . . . . . . . . . . . . . . . . . . .  14

*Bromfield-Thompson v.
American University of Antigua*,
No. 20-3855, 2021 WL 4931953
(2d Cir. Oct. 22, 2021) . . . . . . . . . . . . . . . . . . . .  19

*Broughton v. Courtney*,
861 F.2d 639 (11th Cir. 1988) . . . . . . . . . . . . . .  21

*Carducci v. Regan*,
714 F.2d 171 (D.C. Cir. 1983) . . . . . . . . . . . . . .  22

*Celestine v. Mount Vernon
Neighborhood Health Center*,
403 F.3d 76 (2d Cir. 2005) . . . . . . . . . . . . . . . .  14

*Dotson v. Griesa*,
398 F.3d 156 (2d Cir. 2005) . . . . . . . . . . . . . . . .  18

iv

PAGE

*Downey v. Runyon*,
    160 F.3d 139 (2d Cir. 1998) . . . . . . . . . . . . . 14, 15

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) . . . . . . . . . . . . . . . . . . . . 18

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) . . . . . . . . . . . . . . . . . . . . . *passim*

*Feit v. Ward*,
    886 F.2d 848 (7th Cir. 1989) . . . . . . . . . . . . . . 18

*Ferry v. Hayden*,
    954 F.2d 658 (11th Cir. 1992) . . . . . . . . . . . . . . 23

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011) . . . . . . . . . . . . . . . 19

*Greenidge v. Allstate Ins. Co.*,
    446 F.3d 356 (2d Cir. 2006) . . . . . . . . . . . . . . . 19

*Herman v. DOJ*,
    193 F.3d 1375 (Fed. Cir. 1999). . . . . . . . . . . . . 12

*Horoshko v. Citibank, N.A.*,
    373 F.3d 248 (2d Cir. 2004) . . . . . . . . . . . . . . . 19

*Kerr v. Jewell*,
    836 F.3d 1048 (9th Cir. 2016) . . . . . . . . 12, 13, 15

*Kloeckner v. Solis*,
    568 U.S. 41 (2012) . . . . . . . . . . . . . . . . . . . . . . 16

*Lombardi v. SBA*,
    889 F.2d 959 (10th Cir. 1989) . . . . . . . . . . . . . . 18

*Menaker v. Hofstra University*,
    935 F.3d 20 (2d Cir. 2019) . . . . . . . . . . . . . . . . . 16

v

PAGE

*Nunes v. Cable News Network, Inc.,*
    31 F.4th 135 (2d Cir. 2022) . . . . . . . . . . . . . . . .   20

*Richards v. Kiernan,*
    461 F.3d 880 (7th Cir. 2006) . . . . . . . . . . . . . .   13

*Roth v. United States,*
    952 F.2d 611 (1st Cir. 1991). . . . . . .   21, 22, 23, 24

*Saul v. United States,*
    928 F.2d 829 (9th Cir. 1991) . . . . . . . . . . . *passim*

*Semper v. Gomez,*
    747 F.3d 229 (3d Cir. 2014) . . . . . . . . . . . . . . .   18

*Stella v. Mineta,*
    284 F.3d 135 (D.C. Cir. 2002) . . . . . . . . . . .   13, 14

*Tiltti v. Weise,*
    155 F.3d 596 (2d Cir. 1998) . . . . . . . . . . . . . . .   21

*Tsirelman v. Daines,*
    794 F.3d 310 (2d Cir. 2015) . . . . . . . . . . . . . . .   11

*United States v. Fausto,*
    484 U.S. 439 (1988) . . . . . . . . . . . .   11, 12, 23, 24

*United States v. Wong,*
    575 U.S. 402 (2015) . . . . . . . . . . . . . . . . . . . . .   14

*Williams v. Citigroup Inc.,*
    659 F.3d 208 (2d Cir. 2011) . . . . . . . . . . . . . . .   19

*Wren v. MSPB,*
    681 F.2d 867 (D.C. Cir. 1982) . . . . . . . . . . . . .   23

*Zipes v. Trans World Airlines, Inc.,*
    455 U.S. 385 (1982) . . . . . . . . . . . . . . . . . . . . .   14

vi

*Statutes*:

5 U.S.C. § 1214(c)(1) . . . . . . . . . . . . . . . . . . . . . . .  14

5 U.S.C. § 1221. . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

5 U.S.C. § 2302(b)(8) . . . . . . . . . . . . . . . . . . . .  12, 22

5 U.S.C. § 2302(b)(12) . . . . . . . . . . . . . . . . . . . . . .  22

5 U.S.C. § 7701(a) . . . . . . . . . . . . . . . . . . . . . . . . .  23

5 U.S.C. § 7702(a)(1)(B). . . . . . . . . . . . . . . . . . . . .  15

5 U.S.C. § 7702(a)(2) . . . . . . . . . . . . . . . . . . . . . . .  16

5 U.S.C. § 7703. . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

5 U.S.C. § 7703(b)(2) . . . . . . . . . . . . . . . . . . . . . . .  15

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

42 U.S.C. § 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

42 U.S.C. § 2000e-2(a)(1). . . . . . . . . . . . . . . . . . . .  8

42 U.S.C. § 2000e-5(f)(3) . . . . . . . . . . . . . . . . . . . .  2

*Rules*:

Federal Rule of Civil Procedure 12(b)(1)  . . . . . . . .  11

vii

PAGE

Federal Rule of Civil Procedure 15(a)(1)(B) . . . . . . . 3

*Regulations*:

5 C.F.R. § 315.802(a) . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. § 1614.310(a) . . . . . . . . . . . . . . . . . . . . . 16

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 22-475

───────────

GNANA M. CHINNIAH, AKA
GNANACHANDRA M. CHINNIAH

*Plaintiff-Appellant,*

—v.—

FEDERAL ENERGY REGULATORY COMMISSION,
JOHN SPAIN, PRAPA HARAN,

*Defendants-Appellees,*

───────────

## BRIEF FOR DEFENDANTS-APPELLEES

───────────

## Preliminary Statement

Plaintiff-appellant Gnana M. Chinniah, proceeding *pro se*, brought this action against his former employer, the Federal Energy Regulatory Commission ("FERC"), and his former supervisors, John Spain and Prapa Haran. Chinniah alleges that defendants retaliated against him, and ultimately terminated him, in response to his purported whistleblowing activities, in violation of the Whistleblower Protection Act of 1989 ("WPA").

2

The district court dismissed Chinniah's claims, and its judgment should be affirmed. The district court correctly concluded it lacked jurisdiction over Chinniah's WPA claim because he failed to exhaust his administrative remedies as required by the Civil Service Reform Act ("CSRA"). The district court also correctly concluded that the CSRA's remedial system precludes Chinniah's *Bivens* claim alleging First Amendment retaliation by defendants Spain and Haran—a claim that, in any event, has been barred by later Supreme Court precedent. Moreover, the district court was correct to conclude that Chinniah's amended complaint failed to allege discrimination on the basis of a protected characteristic. It did not abuse its discretion by failing to grant Chinniah leave to further amend his amended complaint to state a claim of discrimination because Chinniah did not make such a request. Finally, the district court correctly concluded that Chinniah's state-law tort claims arise out of his federal employment, involve FERC's personnel decisions, and are thus preempted by the CSRA.

**Jurisdictional Statement**

The district court had subject matter jurisdiction over Chinniah's First Amendment *Bivens* claim under 28 U.S.C. § 1331. It also had jurisdiction over any properly pleaded discrimination claim under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). As explained below, the district court lacked jurisdiction over Chinniah's WPA and state-law tort claims. The district court entered final judgment on February 10, 2022, and Chinniah filed a timely notice of appeal on

3

March 7, 2022. (Appendix of Appellant ("A.") 4, 19).
This Court has jurisdiction under 28 U.S.C. § 1291.

## Issues Presented for Review

1.  Whether the district court correctly concluded
that it lacked jurisdiction over Chinniah's WPA claim.

2.  Whether the district court correctly concluded
that Chinniah's First Amendment *Bivens* claim was
precluded by the CSRA.

3.  Whether the district court acted within its dis-
cretion by not permitting Chinniah to amend his dis-
crimination claim when amendment was never re-
quested.

4.  Whether the district court correctly concluded
that Chinniah's state-law tort claims were preempted
by the CSRA.

## Statement of the Case

### A.  Procedural History

Chinniah filed this action in September 2018
against his former employer, FERC, and his former su-
pervisors, Spain and Haran. (A. 1). On May 20, 2019,
defendants filed a motion to dismiss Chinniah's com-
plaint, and on May 21, 2019, the district court issued
an order directing Chinniah to file any amended com-
plaint within the time provided by Federal Rule of
Civil Procedure 15(a)(1)(B), and warning him that it
was "unlikely" that he would have a further opportu-
nity to amend. (A. 2–3; Dist. Ct. ECF No. 16). On August
8, 2019, Chinniah filed an amended complaint, and on

4

September 6, 2019, defendants filed a motion to dismiss Chinniah's amended complaint. (A. 3). On February 9, 2022, the district court granted defendants' motion to dismiss the amended complaint. (A. 5–18). Judgment was entered the following day. (A. 4). Chinniah filed a timely notice of appeal on March 7, 2022. (A. 4, 19).

## B.  Chinniah's Allegations

As alleged in the amended complaint, Chinniah was hired in the competitive service by FERC on January 23, 2017, as a civil engineer in FERC's New York Regional Office. (A. 21). During Chinniah's employment, he reported to Haran, the Branch Chief of the New York Regional Office. (A. 20–21).

Haran required those he supervised, including Chinniah, to sign in and out on a sign-in sheet on those days that they were in the New York Regional Office. (A. 21). When Chinniah went to sign in on July 13, 2017, around 7:35 a.m., he noticed that his colleague, Harold Kamara, had already "signed in" at 8:30 a.m. (A. 22). Chinniah discussed Kamara's 8:30 a.m. "sign in" with his colleague, Richard Deubert, and confirmed that Kamara was not in the building around 7:40 a.m. (A. 22).

Chinniah reported Kamara's conduct to Haran. (A. 23). Because Haran "never showed any interest to follow up on this incident," on July 27, 2017, Chinniah reported Kamara's conduct to Spain, who was Haran's supervisor. (A. 20, 23). Chinniah alleges that Spain "downplayed" the incident, stating that Kamara may have come to the New York Regional Office to sign in

5

and then left to perform dam safety inspections. (A. 23).

When Chinniah did not accept this response, Spain "became visibly angry and intimidated [Chinniah] by saying the supervision of these issues [was] not [Chinniah's] responsibility." (A. 23–24). Chinniah claims that Spain also threatened to terminate Chinniah's probationary employment at that time. (A. 24). Chinniah told Spain that he only wanted to have a meeting with Haran so that Kamara's conduct could be investigated. (A. 24). In response, Spain asked Chinniah whether he was available on July 31, 2017, to arrange a meeting with Haran. (A. 24).

After Chinniah returned to his desk, he sent an email to Spain and Haran, copying Deubert, suggesting that Deubert should be included in the meeting. (A. 24). Shortly after the email was sent, Spain rushed to Chinniah's cubicle, and "whispered threats using derogatory language stating that [Chinniah] was not even worth a half of what Mr. Kamara was doing for FERC." (A. 24). As Spain returned to his office, Chinniah began questioning him in a loud voice. (A. 24). After Spain closed his office door, Chinniah showed Donna Samuels, Spain's assistant, the email. (A. 25). As Chinniah was showing the email to Samuels, Spain came out of his office and asked Samuels to call the Federal Protective Service to have Chinniah removed from the premises. (A. 25). In response, Chinniah left the building voluntarily and surrendered his security access card. (A. 25).

As a consequence of the events on July 27, 2017, Chinniah claims he did not feel fit to return to work on

6

Monday, July 31, 2017, and he therefore sent an email that morning to Spain and Haran requesting sick leave and to reschedule the meeting. (A. 25). Later that day, Spain sent Chinniah an email, placing him on administrative leave with a recommendation to Human Resources to terminate Chinniah's probationary employment. (A. 26). On August 1, 2017, Chinniah forwarded Spain's email to David Capka, the Director of the Division of Dam Safety and Inspections, and Spain's direct supervisor. (A. 26). Capka replied, stating that he forwarded the email to Human Resources. (A. 26).

On August 11, 2017, Sidney Chapman, the Director of FERC's Workforce Relations Division, left Chinniah a voicemail, informing Chinniah that Capka had directed him to investigate the incident concerning the sign-in sheets. (A. 26). Chinniah subsequently spoke with Chapman about the alleged events, and Chapman said that he would investigate the matters. (A. 27). On September 11, 2017, Spain emailed Chinniah a letter, terminating his employment, effective September 15, 2017, and explaining the basis for Chinniah's termination. (A. 28).

## C.  The District Court's Order Dismissing the Complaint

On February 9, 2022, the district court issued an opinion and order dismissing Chinniah's amended complaint. (A. 5–18).

With respect to Chinniah's WPA claim, the district court concluded that it lacked subject matter jurisdiction. It noted that the CSRA governs claims for

7

whistleblowing activities brought by federal employees against their employers and is the exclusive mechanism by which such employees may challenge prohibited retaliatory personnel practices. (A. 12). It further noted that the CSRA requires an aggrieved employee to exhaust administrative remedies by filing a claim with the Office of Special Counsel ("OSC") and appealing, if at all, to the Merit Systems Protection Board ("MSPB"). (A. 12). Only after exhausting administrative remedies may an aggrieved employee seek judicial review, and only then in the United States Court of Appeals for the Federal Circuit. (A. 12). The district court concluded that it lacked jurisdiction over Chinniah's WPA claim given his admitted failure to exhaust administrative remedies; the court further held that it could not consider whether to excuse Chinniah's failure to exhaust given its lack of jurisdiction over the claim in the first instance. (A. 13).

With respect to Chinniah's First Amendment claim, the district court concluded that any such claim against FERC was barred by sovereign immunity, and any *Bivens* claim against Spain and Haran was precluded by the CSRA's elaborate remedial system. (A. 15).[1]

The district court further concluded that the amended complaint failed to state a claim for employment discrimination under Title VII of the Civil Rights

_____

[1] Chinniah does not appeal the district court's dismissal of any First Amendment claim asserted against FERC.

8

Act ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), because Chinniah did not allege any discrimination on the basis of a protected characteristic. (A. 14). And the district court ruled that Chinniah's failure to allege any discrimination on the basis of race was also fatal to his claim under 42 U.S.C. § 1981, and determined that the amended complaint was devoid of any allegations of conspiracy to support a claim under 42 U.S.C. § 1985. (A. 14–15). The district court also concluded that Chinniah's claim under 42 U.S.C. § 1983 failed because a § 1983 action lies only against state, and not federal, officers.[2] (A. 16).

Finally, with respect to Chinniah's state-law tort claims, the district court noted that torts arising out of federal employment are preempted by the CSRA. (A. 17). It then determined that Chinniah's state-law

—————

[2] Chinniah does not appeal the district court's dismissal of his claims asserted under 42 U.S.C. §§ 1981, 1983, and 1985, nor does he appeal the district court's dismissal of his discrimination claim for failure to allege discrimination on the basis of a protected characteristic. Rather he only appeals the district court's dismissal of his discrimination claim without giving him the opportunity to further amend his amended complaint, arguing that his amended complaint "did raise claims for discrimination" and that he should have been granted leave to amend it in order to state such claims. (Brief of Appellant ("Br.") 27–28). Defendants construe his reference to "claims for discrimination" to mean claims under Title VII, as the district court did.

9

tort claims for invasion of privacy and defamation arose out of his federal employment and involved FERC's personnel decisions. (A. 16–17). The district court thus concluded that such claims fell within the scope of the CSRA and were therefore preempted by it.[3] (A. 17).

## Summary of Argument

The district court correctly dismissed Chinniah's action in its entirety. First, the district court lacked jurisdiction over Chinniah's WPA claim because he failed to exhaust his administrative remedies as required by the CSRA, as by his own admission he failed to present his whistleblowing allegations to OSC and then to the MSPB. Even if he had exhausted his administrative remedies, the Federal Circuit, rather than a district court, is the only court with jurisdiction to judicially review Chinniah's claims. These jurisdictional defects could not be excused for any equitable reason. While Chinniah notes that some CSRA claims are heard in district court, those involve a narrow exception to the CSRA's usual procedures for "mixed cases"—*i.e.*, cases involving WPA claims mixed with claims of employment discrimination based on certain protected grounds. But Chinniah has not alleged any such unlawful discrimination. And if he had, he still would have been required to exhaust his administra-

---

[3]    In a footnote, the district court stated that if Chinniah's state-law tort claims were not preempted, it would decline to exercise supplemental jurisdiction over them. (A. 17).

10

tive remedies before proceeding to district court. *See infra* Point I.

Second, the CSRA precludes federal employees from challenging adverse employment decisions through *Bivens* actions for damages. Even if the CSRA did not preclude Chinniah's First Amendment *Bivens* claim, there is no cognizable *Bivens* action for First Amendment retaliation. Chinniah's *Bivens* claims were properly dismissed for those reasons. *See infra* Point II.

Third, Chinniah did not request to further amend his amended complaint to state a claim of unlawful employment discrimination before the district court, and thus his contention that the district court abused its discretion in not permitting him an amendment he never requested is meritless. *See infra* Point III.

Finally, Chinniah's state-law tort claims are preempted by the CSRA, which provides the exclusive remedy by which federal employees may challenge personnel actions. The alleged actions that form the basis for Chinniah's state-law tort claims constitute personnel actions under the CSRA, and thus the CSRA governs, preempting these claims. *See infra* Point IV.

Accordingly, the district court correctly dismissed Chinniah's action with prejudice, and its judgment should be affirmed.

11

**A R G U M E N T**

**Standard of Review**

This Court reviews de novo the district court's dismissal of a complaint, either for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6). *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). It reviews a district court's decision to permit or deny leave to amend a complaint for abuse of discretion. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015).

**POINT I**

**The District Court Correctly Dismissed Chinniah's WPA Claim for Lack of Jurisdiction**

To assert a claim under the WPA, Chinniah was required to comply with the CSRA, including its requirements that he exhaust administrative remedies and seek review only in the Federal Circuit. Chinniah failed to do so; consequently, the district court lacked jurisdiction.

**A.    The Civil Service Reform Act's Procedures for Review of Personnel Actions**

The CSRA sets forth a "'comprehensive system for reviewing personnel action taken against federal employees.'" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). It "'prescribes in great detail the protections and remedies applicable to' adverse personnel

12

actions against federal employees," including the availability of administrative and judicial review. *Id.* at 11 (quoting *Fausto*, 484 U.S. at 443). That "'elaborate' framework" for review of personnel actions is "exclusive"—Congress has "entirely foreclose[d]" any avenue of judicial review that does not conform to the statute's prescribed methods. *Id.* at 11–13 (quoting *Fausto*, 484 U.S. at 443). Accordingly, the CSRA "preclude[s] . . . jurisdiction" in federal court over any claims that lie outside the scheme of administrative and judicial review. *Id.* at 10–13; *accord Kerr v. Jewell*, 836 F.3d 1048, 1058 (9th Cir. 2016).

Among the prohibited personnel practices covered by the CSRA are employment decisions resulting from activity protected by the WPA. *See* 5 U.S.C. § 2302(b)(8).[4] Because "[t]he CSRA and the WPA are integrated into a single statutory scheme . . . 'the CSRA provides the exclusive remedy for claims brought pursuant to the WPA.'" *Kerr*, 836 F.3d at 1058

––––––––––

4   The WPA prohibits a "personnel action" taken "because of" certain disclosures that an employee "reasonably believes" are evidence of "any violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). It "was enacted to protect employees who report genuine violations of law, not to encourage employees to report minor or inadvertent miscues occurring in the conscientious carrying out of a federal official or employee's assigned duties." *Herman v. DOJ*, 193 F.3d 1375, 1381 (Fed. Cir. 1999).

13

(quoting *Richards v. Kiernan*, 461 F.3d 880, 885–86 (7th Cir. 2006)).

"[A]n employee who believes she is the victim of an unlawful reprisal [under the WPA] must first bring her claim to the OSC, which investigates the complaint." *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) (citing 5 U.S.C. § 1214). "If the OSC finds no agency wrongdoing, then the employee herself may bring an action before the MSPB." *Id.* (citing 5 U.S.C. §§ 1221, 1214(a)(3)). "The MSPB's decision is appealable to the Federal Circuit." *Id.* (citing 5 U.S.C. § 7703). But, given the exclusivity of the CSRA's review provisions, a district court lacks jurisdiction "to entertain a whistleblower cause of action brought directly before it in the first instance." *Id.*

## B.  The District Court Lacked Jurisdiction to Consider Chinniah's Claim

Applying those principles, the district court correctly concluded it lacked jurisdiction over Chinniah's WPA claim. Chinniah failed to exhaust his administrative remedies with respect to that claim; indeed, he concedes that he did not file a claim with OSC or an appeal with the MSPB. (A. 31). Accordingly, because Chinniah was required to bring his WPA claim to the OSC in the first instance but admittedly failed to do so, the district court correctly dismissed this claim for lack of jurisdiction. *See Kerr*, 836 F.3d at 1058; *Stella*, 284 F.3d at 144.

Even if Chinniah had exhausted his administrative remedies before the OSC and MSPB, the district court's dismissal still would have been proper because

14

challenges to a final MSPB decision on a claim of violations of the WPA must be raised before the Federal Circuit, not in district court. *See* 5 U.S.C. §§ 1214(c)(1); 7703(b)(1); *Downey v. Runyon*, 160 F.3d 139, 143–44 (2d Cir. 1998) (Federal Circuit has "exclusive jurisdiction" over CSRA appeals).

As the district court recognized, Chinniah's attempts to evade these jurisdictional rules do not withstand scrutiny. Chinniah argues that the district court should have excused his failure to exhaust administrative remedies on the basis of "equitable circumstances." (Br. 21–27). But a jurisdictional prerequisite to suit, such as the CSRA's exhaustion requirement, is not subject to waiver, estoppel, or equitable tolling—courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *accord United States v. Wong*, 575 U.S. 402, 409 (2015) (courts "must enforce" jurisdictional limitations "even if equitable considerations would support" an exception); *see also Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 82 (2d Cir. 2005) (exhaustion requirement under separate statute is "jurisdictional and cannot be waived"). Thus, although administrative exhaustion requirements in nonjurisdictional contexts may be equitably tolled (Br. 23, citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982); *see Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000) (exhaustion requirement nonjurisdictional for federal-sector employment discrimination claims)), the same is not true here, where the exhaustion requirement is jurisdictional. *Stella*, 284 F.3d at 144 ("[B]ecause the District Court lacked jurisdiction to hear a whistleblower claim in the first

15

instance, the court lacked the power to excuse [plaintiff's] failure to exhaust her administrative remedies."); *Kerr*, 836 F.3d at 1058 n.7.[5]

Chinniah also argues, relying on *Bonds v. Leavitt*, 629 F.3d 369 (4th Cir. 2011), that the CSRA provides a direct right of action in federal district court for claims alleging whistleblower retaliation. (Br. 19). But *Bonds* involved a "mixed case"—that is, a case involving a CSRA claim as well as "employment discrimination" prohibited by Title VII or another antidiscrimination statute. 629 F.3d at 378; *see* 5 U.S.C. § 7702(a)(1)(B) (listing covered antidiscrimination statutes); *Downey*, 160 F.3d 141–42. Such a case is the "only" situation where the CSRA "exempt[s]" a federal employee from review by the MSPB and Federal Circuit, instead allowing review "as provided by the applicable employment law" in district court. *Elgin*, 567 U.S. at 13; *accord Downey*, 160 F.3d at 143; *see Kerr*, 836 F.3d at 1055–57 (describing administrative and judicial review procedures for mixed cases); *Bonds*, 629 F.3d at 378 (same); *see* 5 U.S.C. § 7703(b)(2) (judicial review of mixed cases is obtained "under" the applicable antidiscrimination statute).

But Chinniah has not brought a mixed case. Although he argues that he alleged "discrimination" (Br. 27–28), his amended complaint does not assert any discrimination based on race, color, religion, sex,

---

[5]    In any event, no equitable reason would excuse Chinniah's failure to seek review in the Federal Circuit rather than district court.

16

national origin, age, disability, or any other protected category. (A. 20 (alleging "discrimination . . . for engaging in activities protected by the First Amendment" and WPA), 32–33 (alleging "discrimination through selective enforcement" of sign-in/sign-out policies without specifying a basis)). But a plaintiff is required to plead "he was within [a] protected class" to state a claim under an antidiscrimination law. *Menaker v. Hofstra University*, 935 F.3d 20, 30 (2d Cir. 2019) (quotation marks and alteration omitted). Accordingly, unlike *Bonds*, this case does not fall within the narrow exception to the CSRA that confers jurisdiction in federal district court for WPA claims "mixed" with discrimination claims.

And even if Chinniah had brought a "mixed" case over which the district court had jurisdiction, he was still required to exhaust administrative remedies before filing suit. *See, e.g.*, *Bonds*, 629 F.3d at 378–79. While an employee asserting a mixed case can choose whether to bring the claims to the MSPB in the first instance, or instead raise them with the agency's own Equal Employment Opportunity ("EEO") office, the employee is still required to exhaust one of those avenues of administrative review. *Kloeckner v. Solis*, 568 U.S. 41, 45 (2012) (when employee elects to "file a discrimination complaint with the agency [EEO office]," she may sue in district court "[i]f the agency decides against her"); 5 U.S.C. § 7702(a)(2), (e)(1)(A) (judicial review available after "decision of the agency [EEO office]" or after 120 days have passed since filing before EEO office); 29 C.F.R. § 1614.310(a), (g) (civil action in district court is "authorized" after "final decision" of EEO office or after 120 days); *see Boos*, 201 F.3d at 181

17

(in non-CSRA discrimination case, employee is "require[d] . . . to exhaust" administrative remedies before EEO office "before initiating a suit in the district court").

Thus, because it is undisputed that Chinniah did not raise any claims administratively, before either the MSPB or the FERC EEO office, he could not invoke the "mixed" case exception to the CSRA's exclusive jurisdiction provision even if it were applicable.

## POINT II

### The District Court Correctly Dismissed Chinniah's *Bivens* Claim

The district court's dismissal of Chinniah's First Amendment retaliation claims against Spain and Haran under the *Bivens* doctrine is correct for two reasons.[6]

―――――――――

6  Chinniah also argues that his amended complaint asserts a claim for "discrimination . . . against the individual Defendants which [is] actionable against them pursuant to" *Bivens*. (Br. 27). However, as discussed above, *see supra* at 15, and as the district court correctly concluded, *see supra* at 8, Chinniah's complaint does not assert any allegation of discrimination based on race, color, religion, sex, national origin, age, or disability, whether pursuant to a constitutional right actionable under *Bivens* or any other authority (A. 14, 20–33).

18

First, "the remedial scheme established by the CSRA precludes federal civil service employees from challenging adverse employment decisions through *Bivens* actions for money damages." *Dotson v. Griesa*, 398 F.3d 156, 168–76 (2d Cir. 2005) (precluding *Bivens* remedy to non-preference eligible exempt employee).[7] The district court properly applied this precedent and dismissed Chinniah's First Amendment *Bivens* claim as precluded by the CSRA.

Second, the Supreme Court recently held that "there is no *Bivens* cause of action for . . . First Amendment retaliation." *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022). Accordingly, even if Chinniah's First Amendment *Bivens* claim were not precluded by the

---

[7] *Accord Semper v. Gomez*, 747 F.3d 229, 237 (3d Cir. 2014) ("the CSRA precludes current or former federal employees from bringing a *Bivens* damages action for alleged constitutional violations arising out of the employment context"); *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991) ("the CSRA precludes even those *Bivens* claims [for work-related actions] for which the act prescribes no alternative remedy"); *Lombardi v. SBA*, 889 F.2d 959, 961 (10th Cir. 1989) (holding *Bivens* claim precluded by the CSRA where "the violations complained of by [plaintiff] occurred only as a result of the employment relationship"); *Feit v. Ward*, 886 F.2d 848, 854–56 (7th Cir. 1989) (holding that the comprehensiveness of the CSRA, together with Congress's authority regarding federal employment, constitute special factors precluding *Bivens* action in employment context).

19

CSRA, dismissal of this claim would still be proper in accordance with *Egbert*.

## POINT III

### The District Court Did Not Abuse its Discretion by Not Permitting Chinniah to Further Amend His Complaint

The district court did not abuse its discretion in dismissing Chinniah's discrimination claim with prejudice, without granting him the opportunity to further amend his amended complaint prior to final judgment —an opportunity Chinniah never requested.

"[N]o court can be said to have erred in failing to grant a request that was not made"; indeed, "the 'contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004)); *accord Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011); *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). That principle applies to counseled and *pro se* parties alike. *See, e.g.*, *Horoshko*, 373 F.3d at 249–50 (applying principle to *pro se* plaintiffs). And it applies in particular where the plaintiff had already amended the complaint in response to a motion to dismiss, and was "warned that [he] would forfeit the chance to address any issues raised in the motion[ ] to dismiss if [he] did not address those issues in [his] amended complaint." *Bromfield-Thompson v. American University of Antigua*, No. 20-3855, 2021 WL 4931953, at *2 (2d Cir. Oct. 22, 2021) (summary order);

*accord Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 147 & n.7 (2d Cir. 2022) (rejecting plaintiff's argument that the district court abused its discretion by not *sua sponte* granting him leave to replead where he filed his amended complaint after receiving a preview of defendant's motion to dismiss and failed to request leave to further amend).

Because Chinniah never asked the district court to permit him to further amend his amended complaint to add allegations of discrimination (A. 36–44), the district court did not abuse its discretion by not permitting such an amendment. Moreover, the government's first motion to dismiss placed Chinniah on notice that his complaint lacked the very allegations of discrimination he now seeks to add (A. 2; Dist. Ct. ECF Nos. 13–14), but when he amended his complaint in response to that motion, Chinniah chose not add such allegations—a choice he made despite the district court's warning that it was unlikely he would have a further opportunity to amend his complaint (A. 3; Dist. Ct. ECF No. 16). Given this course of events, Chinniah's contention that the district court abused its discretion by not *sua sponte* granting him leave to add allegations of discrimination is meritless.

## POINT IV

### The District Court Correctly Dismissed Chinniah's State-Law Tort Claims as Preempted by the CSRA

Chinniah finally argues that the district court erred in refusing to exercise jurisdiction over his state-law tort claims after dismissing his federal law claims. (Br. 28–29). To the contrary, the district court

21

correctly dismissed Chinniah's state-law tort claims as preempted by the CSRA.

As discussed above, the CSRA's system for reviewing federal employees' challenges to employment decisions is "comprehensive" and "exclusive." *Elgin*, 567 U.S. at 11–13. "[U]nless the [CSRA] either explicitly or by necessary implication sanctions judicial challenges to [personnel] actions, judicial challenge is foreclosed." *Tiltti v. Weise*, 155 F.3d 596, 600 (2d Cir. 1998). Accordingly, "[i]t is now beyond serious question that the CSRA preempts state-law challenges to prohibited personnel practices in the federal workplace," *Roth v. United States*, 952 F.2d 611, 614 (1st Cir. 1991)—the CSRA "left no room for [state-law tort remedies] to operate," *Saul v. United States*, 928 F.2d 829, 840–43 (9th Cir. 1991); *accord Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1988).

Chinniah's state-law tort claims are directed to allegedly prohibited personnel practices taken against him, and are therefore preempted by the CSRA. Chinniah asserts two state-law claims: first, that Spain and Haran made allegedly false accusations about his work performance; and second, that in urging him to schedule his wife's upcoming surgery before his health benefits ended, Haran disclosed confidential information to other agency employees and violated Chinniah's family's privacy. (A. 27–29, 32). Chinniah claims that Spain and Haran took these actions as a means to dissuade Chinniah from pursuing his alleged "whistleblowing" complaints concerning the use of the sign-in sheets, and also to retaliate against him for raising those concerns. (A. 27–29, 32).

22

Those claims fall squarely within the CSRA, which, as detailed above, prohibits a "personnel action" taken "because of" protected whistleblower activity. 5 U.S.C. § 2302(b)(8), (9). A "personnel action" includes a "corrective action," *id.* § 2302(a)(2)(A)(iii)—a "capacious" category that "encompass[es] a wide variety of conduct affecting federal employees," *Roth*, 952 F.2d at 614; *accord Saul*, 928 F.2d at 834 ("corrective action" to be read "broadly"); *see Carducci v. Regan*, 714 F.2d 171, 174 n.3 (D.C. Cir. 1983) (Scalia, J.) ("The *types* of personnel action which can constitute grounds for a prohibited personnel practice claim are extremely broad, if not exhaustive."). Chinniah's allegations that his supervisors made comments about his performance, or made disclosures connected to the status of his expiring health benefits, are within that category—indeed, Chinniah affirmatively pleads that the allegedly defamatory remarks and purported disclosure of personal information concerned his work duties and performance. (A. 30–32). And Chinniah also alleges that these personnel actions were taken to retaliate for, and to prevent him from further pursuing, alleged whistleblowing activity—that is, they were "because of" that whistleblowing or Chinniah's procedural rights connected to that whistleblowing, and therefore covered by § 2302(b)(8) and (9).

In addition, the CSRA covers personnel actions that violate merit system principles. 5 U.S.C. § 2302(b)(12); *see Saul*, 928 F.2d at 833; *Roth*, 952 F.2d at 614. "The merit system principles include treating employees fairly and equitably, 'with proper regard for their privacy and constitutional rights,' as well as protecting employees against arbitrary action and

23

personal favoritism." *Saul*, 928 F.2d at 833 (citing 5 U.S.C. § 2301(b)(2), (b)(8)(A)). Thus, the CSRA governs, and therefore preempts, Chinniah's state-law tort claims, because "no matter how generously [they] might be read, [they] allege[ ] a prohibited personnel practice, that is, a personnel action violative of the merit principles." *Roth*, 952 F.2d at 614; *accord Saul*, 928 F.2d at 841.

That Chinniah was a probationary employee,[8] and thus lacks direct appeal rights to the MSPB from his termination, *see* 5 U.S.C. §§ 7701(a) ("employee" may appeal to MSPB), 7511(a)(1)(A)(i) (defining "employee" to exclude those in probationary period); *Ferry v. Hayden*, 954 F.2d 658, 660–61 (11th Cir. 1992); *Wren v. MSPB*, 681 F.2d 867, 871 (D.C. Cir. 1982), does not give him a right to pursue remedies outside of the CSRA. (*Contra* Br. 24). In enacting the CSRA, Congress chose not to preserve pre-CSRA rights for those employees the statute does not cover. *See Fausto*, 484 U.S. at 448–51 (rejecting theory that persons excluded from CSRA retain their pre-CSRA remedies). To have done so would have placed probationary employees in a better position than employees, and would under-

---

8    Chinniah repeatedly asserts that his "6-month probation" had ended (Br. 14), but he cites no evidence or authority, and the record is undisputed that his probationary period was one year (Dist. Ct. ECF No. 15 ¶ 4); *see* 5 C.F.R. § 315.802(a). Regardless, whether or not Chinniah was a probationary employee is irrelevant to whether the actions he complains of are covered by the CSRA.

24

mine Congress's purpose in enacting the CSRA—
namely, to replace the "patchwork system" of protec-
tion for federal employees "with an integrated scheme
of administrative and judicial review, designed to bal-
ance the legitimate interests of the various categories
of federal employees with the needs of sound and effi-
cient administration." *Id.* at 445. Thus, "even where
the CSRA provides no guaranteed forum, preemption
of work-related tort claims is necessary to fulfill con-
gressional intent." *Roth*, 952 F.2d at 615 (quotation
marks and alteration omitted) (holding state-law torts
were preempted despite lack of remedy); *accord Saul*,
928 F.2d at 840 ("[T]he preclusive effect of the CSRA
sweeps beyond the contours of its remedies.").

Thus, the district court properly dismissed
Chinniah's state-law tort claims as preempted by the
CSRA.

25

## CONCLUSION

**The judgment of the district court should be affirmed.**

Dated:    New York, New York
           September 12, 2022

              Respectfully submitted,

              DAMIAN WILLIAMS,
              *United States Attorney for the*
              *Southern District of New York,*
              *Attorney for Defendants-Appellees.*

ALYSSA B. O'GALLAGHER,
BENJAMIN H. TORRANCE,
    *Assistant United States Attorneys,*
        *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 5383 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: ALYSSA B. O'GALLAGHER,
*Assistant United States Attorney*